**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| JTH TAX, LLC f/k/a JTH TAX, INC. d/b/a LIBERTY TAX SERVICES and SIEMPRETAX+, LLC, | : : : : | Case No: |
| Plaintiffs, | : : | **VERIFIED COMPLAINT** |
| v. | : : | |
| BABLU  SHAHABUDDIN, | : : | |
| Defendant. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs JTH Tax, LLC, formerly known as JTH Tax, Inc., d/b/a Liberty Tax Services ("Liberty") and SiempreTax+, LLC ("SiempreTax+") (collectively, "Plaintiffs"), by counsel, allege for their Verified Complaint against Defendant Bablu Shahbuddin ("Shahbuddin") as follows:

**NATURE OF THE ACTION**

1.     This is a civil action for preliminary and permanent injunctive relief, breach of contract, unjust enrichment and specific performance of a contract between Shahbuddin and Plaintiffs requiring Shahbuddin to transfer certain leases to Plaintiffs.

2.     Plaintiffs are franchisors of tax preparation service centers across the country. Shahbuddin is a former franchisee of Plaintiffs.  Due to Shahbuddin's in-term breaches of franchise agreements between Shahbuddin and Plaintiffs, Plaintiffs terminated Shahbuddin's franchisee status at the beginning of the 2016 tax season.

3.     In an effort to maintain the continuity of tax preparation services offered at the locations of Shahbuddin's former Liberty Tax Service® and SiempreTax+® franchises, on June 30, 2016, Shahbuddin and Plaintiffs entered into an Agreement of Purchase and Sale ("PSA") wherein

Shahbuddin agreed to transfer, among other things, leases for his former Liberty Tax Service® and SiempreTax+® franchises to Plaintiffs ("Leases") and allow Plaintiffs to operate Liberty Tax Service® and SiempreTax+® offices from the locations of Shahbuddin's former Liberty Tax Service® and SiempreTax+® franchise locations ("Subject Locations").

4.      Shahbuddin refused to assign the Leases to Plaintiffs; however, Plaintiffs were left with no alternative but to continue operating tax preparation offices from the Subject Locations after the parties entered into the PSA so as not to disrupt the continuity and quality of its tax preparation services.

5.      Because the majority of Plaintiffs' business is generated during the tax season, once it became clear that Shahbuddin would not be assigning the Leases to Plaintiffs, Plaintiffs entered into license agreements with Shahbuddin ("Licensing Agreement(s)") under which Plaintiffs had the right to continue to operate tax preparation businesses at the Subject Locations from January 1, 2020 through April 30, 2020, during which time Plaintiffs believed Shahbuddin would assign the Leases to Plaintiffs.

6.      Rather than transfer the Leases to Plaintiffs, Shahbuddin has advised that he intends to prevent Plaintiffs from continuing to offer tax preparation services at the Subject Locations at the expiration of the License Agreements, *i.e.*, April 30, 2020.

7.      Shahbuddin' refusal to transfer the Leases to Plaintiffs violates the terms of the PSA, unjustly enriches Shahbuddin and causes continuing financial damages and irreparable harm to Plaintiffs' goodwill and reputation, as well as the overall health of its franchise system.

8.      Accordingly, Plaintiffs seek an immediate injunction (a) enjoining Shahbuddin from preventing Plaintiffs from doing business at the Subject Locations; and (b) enjoining Shahbuddin  from constructively evicting Plaintiffs from the Subject Locations, including, but not

limited to, suspending basic utilities flowing to the Subject Locations, changing locks at the Subject Locations, removing client information from the Subject Locations, representing to consumers that Plaintiffs are not doing business at the Subject Locations or otherwise obstructing Plaintiffs' access to the Subject Locations.

9.      Plaintiffs also seek specific performance of the PSA, including but not limited to the assignment of the Leases to Plaintiffs.

## THE PARTIES

10.     Liberty is a Delaware limited liability company that is owned and operated under the laws of Delaware with a principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, VA 23454.  All of the members of Liberty are residents of Delaware and Virginia.

11.     SiempreTax+ is a Delaware limited liability company that is owned and operated under the laws of Delaware with a principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, VA 23454.  All of the members of SiempreTax+ are residents of Delaware and Virginia.

12.     Shahbuddin is a citizen of the State of New York who resides in New Rochelle, New York.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Shahbuddin because he is a citizen of New York.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, a substantial part of property that is the subject of the action is situated in this District, and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

### Plaintiffs' Franchise System

15.     Plaintiffs are is franchisors of Liberty Tax Service® and SiempreTax+® tax preparation centers throughout the United States, including in New York.

16.     Plaintiffs play an important role in the local economies in which its franchisees operate (including New York), with a network of over 12,000 tax preparers.

17.     Plaintiffs grant licenses to franchisees to participate in their confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Plaintiffs' valuable confidential information, reputation, goodwill, and other legitimate business interests.

18.     As a result of extensive time and money invested by Plaintiffs, their franchise system has become associated with uniform services of consistently high quality, provided only by persons following Plaintiffs' approved sales, operating methods, and procedures.

19.     Plaintiffs have worked tirelessly to build their reputation and goodwill, which are inextricably tied to franchisees and the individual franchise locations operated by each franchisee, including the Subject Locations.

### Shahbuddin 's Obligations under the PSA

20.     On June 30 2016, Shahbuddin entered into the PSA, under which he agreed to, among other things, sell the "assets, properties and rights" of Shahbuddin's former Liberty Tax Service® and SiempreTax+® franchises "over every kind and nature," as well as transfer all Leases to Plaintiffs at Plaintiffs' request. *See* **Exhibit A**, PSA at ¶¶ 1, 8(e), 10.

21.     In exchange for the assignment of the Leases, Plaintiffs agreed to pay nearly $675,000 to Shahbuddin, plus ten (10%) percent net revenue for Fiscal Years 2017, 2018 and 2019, subject to reductions for additional liabilities as defined in the PSA.  *Id.* at ¶ 2.

22.     Plaintiffs performed all obligations under the PSA.

**Shahbuddin's Breach of the PSA**

23.     After the parties entered into the PSA, Plaintiffs requested that Shahbuddin transfer the Leases to Plaintiffs.

24.     Shahbuddin refused to transfer the Leases to Plaintiffs at that time.

25.     From June 2016 through July 2019, Plaintiffs, through franchisee Mike Cybulski, operated Liberty Tax Service® and SiempreTax+® tax preparation offices from the Subject Locations pursuant to the PSA.  During that period of time, Plaintiffs paid 10% of its net revenues to Shahbuddin.

26.     At no point between June 2016 and July 2019 did Shahbuddin assign the Leases to Plaintiffs.

27.     In order to maintain the integrity and continuity of its services at the Subject Locations for the 2020 tax season, which has a direct impact on Plaintiffs' goodwill and reputation, and fully expecting that Shahbuddin would transfer the Leases to Plaintiffs, Plaintiffs entered into the Licensing Agreements on January 1, 2020. *See* **Exhibit B**, Licensing Agreements.

28.     Under the Licensing Agreements, Plaintiffs agreed to pay licensing fees in the collective amount of approximately $392,000 in order to maintain the continued integrity of its services by operating Liberty Tax Service® and SiempreTax+® offices at the Subject Locations. *Id*.

29.     Plaintiffs performed all obligations under the Licensing Agreements.

5

30.     After the parties entered into the Licensing Agreements, Plaintiffs again demanded assignment of the Leases to Plaintiffs.

31.     As of the date of this Complaint, the Leases have not been assigned to Plaintiffs.

### COUNT I
### *Breach of Contract Against Shahbuddin*
### *(Equitable Claim – Specific Performance)*

32.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

33.     The PSA is valid and enforceable with reasonably definite terms that has been accepted by Shahbuddin and Plaintiffs

34.     The PSA is supported by consideration.

35.     The PSA is supported by mutuality of obligation and remedy between the parties.

36.     Plaintiffs have performed every obligation and condition required under the PSA.

37.     Shahbuddin has failed to assign the Leases for the Subject Locations to Plaintiffs at Plaintiffs' request, in violation of Section 8(e) of the PSA.

38.     There is no adequate remedy at law for Shahbuddin's non-performance.  As a direct and proximate result of Shahbuddin's non-performance of the PSA, Plaintiffs will incur substantial and irreparable harm if the Court does not require Shahbuddin's performance of contractual obligations, including but not limited to: (a) loss of and damage to Plaintiffs' reputation, customer goodwill and loyalty; (b) Plaintiffs' loss of business opportunities, customers and relationships; (c) Plaintiffs' loss of profits and competitive advantage; (d) Plaintiffs' loss of franchisee stability; (e) loss of an interest in real property that is unique and particularly developed by Liberty Tax; and (f) attorney's fees and costs incurred by Plaintiffs in connection with this action.

39.     Liberty will be irreparably harmed by Defendant's actions, and monetary damages are an insufficient remedy because it cannot take into account the continuing irreparable damage

to the value of Liberty's brand, goodwill, reputation and customer loyalty together with the loss of an interest in real property.

40.     Unless the Court orders Shahbuddin to specifically perform his obligations under the PSA, by assigning the Leases to Plaintiffs, Plaintiffs will continue to suffer irreparable harm and other damages.

**COUNT II**
***Breach of Contract***
***(Monetary Claim)***

41.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

42.     The PSA is valid and enforceable with reasonably definite terms that has been accepted by Shahbuddin and Plaintiffs.

43.     The PSA is supported by consideration.

44.     The PSA is supported by mutuality of obligation and remedy between the parties.

45.     Plaintiffs performed every obligation and condition required under the PSA.

46.     Shahbuddin has failed to assign the Leases for the Subject Locations to Plaintiffs, at Plaintiffs' request, in violation of Section 8(e) of the PSA.

47.     Shahbuddin's breach of the PSA is intentional, knowing and material.

48.     As direct and proximate result of Shahbuddin's breach of the PSA, Plaintiffs have incurred, and will continue to incur, significant losses, fees, and expenses in connection with vacating the Subject Locations, costs of identifying similar commercial spaces and the cost of occupying same, all of which Shahbuddin is liable.

49.     Due to Shahbuddin's breach of the PSA, Plaintiffs are entitled to offset against any amounts claimed as indemnification under Section 13 of the PSA, any amounts claimed with respect to breaches of any of the covenants contained in Section 10 and Section 12, and any

7

amounts claimed with respect to any other breach of a representation, warranty or covenant contained in the PSA.

50.     Because Shahbuddin intentionally and maliciously breached the PSA, Liberty Tax is entitled to an offset of the Purchase Price, as well as punitive damages.

### COUNT III
#### *Unjust Enrichment Against Shahbuddin*

51.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

52.     By performing under the PSA, Plaintiffs conferred a benefit on Shahbuddin.

53.     In exchange for this benefit, Shahbuddin was obligated to assign the Leases to Plaintiffs.

54.     Shahbuddin knowingly accepted and retained monies paid under the PSA.

55.     Shahbuddin did not assign the Leases to Plaintiffs.

56.     Shahbuddin has profited from his unlawful actions at the expense of Plaintiffs under circumstances in which it would be unjust for Shahbuddin to be permitted to retain those benefits.

57.     It is against equity and good conscience to permit Shahbuddin to retain the benefits.

### COUNT IV
#### *Request for Preliminary Injunction Against Shahbuddin*

58.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

59.     As a result of Shahbuddin's refusal to assign the Leases to Plaintiffs, Plaintiffs will suffer irreparable harm to the goodwill associated by Plaintiffs' customers with the Subject Locations, as well as to its reputation and the health of its franchise system.

60.     If Shahbuddin is not required to assign the Leases to Plaintiffs pursuant to the terms of the PSA, Plaintiffs will continue to suffer irreparable harm to its reputation, goodwill and franchise system.

61.    Therefore, Plaintiffs respectfully seek the following injunctive relief:

    A.    Enjoining Shahbuddin from removing Plaintiffs from accessing and/or operating businesses from the Subject Locations at the termination of the License Agreements, *i.e.*, April 30, 2020; and

    B.    Enjoining Shahbuddin from constructively evicting Plaintiffs from the Subject Locations, including, but not limited to, suspending basic utilities flowing to the Subject Locations or changing the locks or otherwise obstructing Liberty Tax's access to the Subject Locations.

62.    Plaintiffs will likely succeed on the merits of its breach of contract and unjust enrichment claims, and it is probable that they will recover from Shahbuddin, as Shahbuddin is openly and actively breaching express, material terms of the PSA.

63.    Irreparable harm will result if a preliminary injunction is not issued because Shahbuddin will remove Liberty Tax from the Subject Locations at the expiration of the License Agreements, which will cause irreversible harm to the goodwill and reputation that Liberty Tax has spent significant time and resources establishing with respect to the Subject Locations.

64.    Plaintiffs have no adequate remedy at law because Shahbuddin refuses to abide by the express terms of PSA.

65.    The injury to Plaintiffs outweighs any injury that would be sustained by Shahbuddin as a result of the requested injunctive relief, especially because Shahbuddin does not currently occupy the Subject Locations.  The Court would merely be keeping the *status quo* between the parties and requiring Shahbuddin to abide by terms of a contract to which he is willingly a party and from which he has benefitted to the detriment of Plaintiffs.

66.    Injunctive relief will not adversely affect the public interest.

67.    Shahbuddin has been or is being served with notice of this application for injunctive relief.

## COUNT V
### *Request for Permanent Injunction*
### *Against Shahbuddin*

68.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

69.     After a trial on the merits or a final judgment, Liberty asks the Court to convert any

preliminary injunction as specified above into a permanent injunction.

70.     Liberty Tax has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Shahbuddin as follows:

71.     For the following preliminary and permanent injunctive relief:

      A.     Enjoining Shahbuddin from further breaching the PSA and the Licensing
            Agreements;

      B.     Enjoining Shahbuddin from removing Plaintiffs from accessing and/or
            operating tax preparation businesses from the Subject Locations0; and

      C.     Enjoining Shahbuddin from constructively evicting Plaintiffs from the
            Subject Locations, including, but not limited to, suspending utilities flowing
            to the Subject Locations (including internet/Wi-Fi access, electricity and
            water) or changing the locks or otherwise obstructing or inhibiting Plaintiffs'
            access to the Subject Locations.

72.     Ordering Shahbuddin assign the Leases for the Subject Locations to Plaintiffs.

73.     Awarding applicable compensatory damages, liquidated damages, expectancy

damages, punitive damages, disgorgement of profits, attorneys' fees and costs to Plaintiffs in

connection with Shahbuddin's breach, in amounts to be proven at trial;

74.     For pre- and post-judgment interest; and

75.     For such other relief as the Court deems just and appropriate.

Dated: March 17, 2020

GORDON REES, SCULLY, MANSUKHANI LLP
*Counsel for Plaintiff JTH Tax, Inc.*
*d/b/a Liberty Tax Service*

 */s/ Peter G. Siachos*
Peter Siachos
Brian E. Middlebrook

1 Battery Park Plaza, 28th Floor
New York, NY 10006
T: (973) 549-2500
E: psiachos@grsm.com
E: jmdoherty@grsm.com

## <u>VERIFICATION</u>

R. Daniel Brashier II does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am the Treasurer for JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty").  I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true.  The grounds of my knowledge, information, and belief are derived from my position as Treasurer at Liberty, my personal involvement in the event underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 17th day of March, 2020.

R. Daniel Brashier II